PAVY, Judge.
On January 28, 1974, Howard Hale, Ralph Sharpe and Clayton Curtis, the defendant in the main demand herein, incorporated Frontier, Inc., the plaintiff in the main demand, under the laws of the State of Mississippi. This was for the general purpose of engaging in aerial spraying of herbicides, pesticides etc. The three incor-porators constituted the board of directors and officers with Curtis being president and general manager with full authority to operate the corporate enterprise. Sometime the previous fall, these three had started in business as a partnership under a loosely arranged and seriously disputed agreement. Generally, under that arrangement, Curtis was to furnish four aircraft and Hale and Sharpe were to furnish $54,000 cash to be used to pay off encumbrances on the aircraft, put them in running condition and convert them (they were originally large commercial planes) for aerial spraying on a massive scale. Originally, Curtis was to own a one-half interest in the business because of his contribution of the aircraft and the other two were to own the other half. Hale had advanced most of the funds by incorporation time. The incorporation transaction vested all the assets in the corporation, gave each of the three incorporators one-third of the stock and one-third of the corporate debts representing the difference between the supposed value ($104,000) of the assets put into the corporation and the stock issued. By creation of separate debts between the individual incorporators, the differences in contribution to the corporate assets were equalized.
Hale was a farmer with cash but unfamiliar with aviation or the technical aspects of aerial spraying. Sharpe had experience in aerial spraying but only as to smaller type aircraft. Curtis was to have the know-how in converting these large cargo planes for aerial spraying and to actually supervise the spraying. According to him there were only six Martin commercial planes converted to aerial spraying in the United States and he had done the engineering or supervised the conversion of all of these.
In the early spring of 1974, the corporation obtained a U.S.D.A. contract for spraying 200,000 acres of land with Mirex, a fire ant insecticide. At the time specified in the contract for commencement of this spraying, only one of the four aircraft was operable and converted for aerial spraying of Mirex. Hale and Sharpe claim that, under the agreement prior to incorporation, Curtis was to have all four aircraft available at this time and blame him for their unavailability. Curtis denies that he guaranteed having all of these aircraft available at any particular time and claims that delays in funding the operation by the other two caused the delay in conversion and readying of the other three *641 aircraft. He also claims the other three planes were to be converted to spray liquid and not Mirex.
With the one converted aircraft and a rented smaller one, the spraying of Mirex proceeded. Difficulties were encountered in the dispersal system of the converted aircraft. Hale and Sharpe blame this on Curtis. He in turn contends that due to late funding he was unable to obtain the proper type metal for augers used in the dispersal system to bring the spray substance from the tank in the trunk of the plane to the wings for ejection. By the end of May, out of eighteen flying days (the government contract and E.P.A. permitted spraying only under certain favorable weather conditions) the converted aircraft was operable for only seven days and the contract was about 75-8S percent complete. At this time the engine in the converted plane failed completely and the government contract was cancelled by mutual consent of the parties in the early days of June.
On May 29, and shortly thereafter Hale and Sharpe attempted to shut down operation of the corporation and prevent the incurring of further indebtedness. This was supposedly done by face to face and telephonic meetings of the board of directors whereby Curtis’ authority to manage was revoked. On June 12 to 14, a formal meeting of the board of directors was held and after much discussion Curtis disassociated himself from the corporation by exchanging his stock in the corporation for one aircraft and a truck. Curtis executed a written release of plaintiff, Hale and Sharpe, as part of the overall transaction but he was not released in that document.
On June 20, Frontier, Inc. filed the present suit and obtained a nonresident at1 tachment on the airplane that had been assigned to Curtis in exchange for his stock. This suit seeks (1) $1,125 for wages paid corporate employees after May 31 when Curtis was supposedly stripped of authority to operate the corporation any longer, (2) $1268 for bonuses paid to pilots prior to May 31 without authority, and (3) $600 allegedly transferred by Curtis from a corporation bank account to another bank account outside corporate control. On July 1, Frontier filed a supplemental petition claiming $20,000 for loss of anticipated profits ($12,000 to $13,000) and actual loss on the government contract ($7,500) and praying that defendant be ordered to account for funds and property of the corporation coming into his hands and, upon accounting, it- have judgment for funds improperly expended and the property so had by defendant or its value.
Curtis reconvened for loss of profits arising out of nonuse of his aircraft while subject to attachment and for attorney fees involved in the dissolution. A preliminary motion to dissolve the attachment was denied.
Shortly after filing suit, plaintiff proceeded by a discovery rule to compel defendant to produce corporate records and disclose corporate assets. A judgment on the rule included an order that defendant “ . . . deliver forthwith and as soon as delivery thereof can be made to Frontier, Inc., through its proper officers, all property of said corporation remaining in his possession or under his control no matter where located ...” This order was on an agreed stipulation between the parties which is reflected in the minutes to show that defendant was to “. . . turn over to the corporation all the corporate property that he has in his possession and to account for the money and other properties that he has received during his administration of the corporate affairs. That would be that he immediately deliver to Frontier Corporation all property belonging to the plaintiff in his possession or under his control and will make full disclosure where all property of the corporation is located, and that would cover such property as he has received from the time these parties en *642 tered into the preincorporation plan on approximately November 15, 1973, up, through and including today ...”
After a lengthy and interrupted trial, the district judge rendered judgment rejecting both the main and the reconventional demands, dissolving the writ of attachment and awarding Curtis $500 attorney fees for said dissolution. Frontier, Inc. has appealed.
In Reasons for Judgment, the trial judge held that the settlement of June 14 had the effect of releasing Curtis because if he (Curtis) had been considered still indebted to the corporation, it would not have turned over to him the aircraft and plane. Counsel for Curtis argues that the settlement must be construed to release Curtis because, if not, there was no consideration for the release by Curtis of Frontier, Inc. and Hale and Sharpe. A close reading of the minutes reveals that the exchange of corporate stock for the plane and truck and the release by Curtis of the corporation, Hale and Sharpe were all part of one transaction. We cannot say that Curtis was released because he obtained something in exchange for his stock. It was desired to get him out of the corporation and, apparently, it could not then be determined to what extent, if anything, he was still liable to the corporation. This was an expeditious partial settlement of their various controversies and a method of getting Curtis out of the corporation. Curtis himself did not testify that the agreement was to contain a release in his favor. We therefore hold that Curtis was not released by the settlement of June 14. It is noted that the document signed by Curtis contained a release in favor of Hale and Sharpe. Whether the release given by Curtis is ineffective as to Hale and Sharpe because not supported by consideration is not now before us. We do not pass on that question.
The court’s reasons also included a finding that Curtis was not responsible for the failure to complete the U.S.D.A. contract. There was conflicting evidence as to whether Curtis actually agreed to have all the planes in operation at any particular time and whether the failure of the operable aircraft to properly function in dispersing Mirex more than it did was due to Curtis’ neglect, the inherent risks in these conversions or the late funding by Hale and Sharpe necessitating use of inferior metal. Further, there is substantial evidence from which to conclude that if the operable plane had not had engine failure (not attributable to Curtis) the contract would have been timely completed. We cannot say that the trial judge committed manifest error on this issue.
As to the payment of bonuses to pilots prior to May 31, the evidence justifies rejection of this claim. There was evidence that it is customary to pay pilots a bonus in addition to straight salary. Curtis stated that he had contracted to pay a bonus. He had full authority to do so. There is a document in evidence referred to by the parties as a prospectus. It is an analysis by Curtis made in the negotiation stages between him and the other two in-corporators to show his proposed contribution to the business assets, the amount necessary to free the planes of encumbrances and to ready them for operation. There is also included a projection of the profit-making capability of these planes after conversion. One of the expenses shown on this profit projection is a bonus to the pilots. Further, in its brief plaintiff does not urge this claim nor list it in its summary of amounts which should be allowed. Apparently that claim as well as the $600 item (similarly not urged for in brief or listed in the summary) has been abandoned.
We do not think Curtis can be held responsible for wages of the employees between May 29 and June 14. Plaintiff claims Curtis was without power to continue operation of the business because his *643 authority to operate was revoked by board of directors meetings on May 29th and June 1st. No actual meetings of the board of directors were held on those dates. They were merely conversations between the three directors. No notices of these meetings were given as was done to effectuate a valid meeting of the board of directors on June 12th to 14th. Although the other two stockholders and directors decided to shut down the business immediately, Curtis thought it should continue and during that time tried to keep the corporation going. We cannot say he acted in bad faith or without authority. The trial judge so held and we think he was on solid ground in making that conclusion.
The above determinations dispose of all claims actually sued for in the two petitions except that for an accounting. In his brief, plaintiff lists seven other items for which he seeks recovery. Some of these concern Curtis’ failure to live up to what is termed the pre-incorporation agreement. Defendant argues that these pre-incorporation items cannot be considered under the pleadings and his objections during the trial. We think the case has been substantially tried, all evidence is in and the ends of justice would be served by our proceeding to dispose of these various claims which we will now consider.
One of these items is a $1,500 claim supposedly representing a fictitious increase in the price of an engine Curtis bought for the corporation. This would apparently come under the accounting but the evidence fails to preponderately show that the engine was actually bought for $4,000 instead of the $5,000. A $500 deposit check is in evidence and a corporate check to purchase a cashier’s check for $5,000 is also in evidence. The cashier’s check was not available and there is on one of the other checks an interlining of a $3,500 amount and a change to a $5,000 amount as representing the purchase price. All in all we cannot conclude that plaintiff has made out his case on this item.
Another accounting item is $1,975.12 for travel and living expense of Curtis and his wife. Curtis claims such fringe benefits were agreed to but Hale and Sharpe deny such. We do not think Curtis’ general managerial authority would authorize him to pay such expenses to himself. Under the straight salary admittedly agreed to he was to receive $1,000 per month. We are inclined to doubt the fringe benefit agreement in view of the denial by Hale and Sharpe. However, $400 of this item is for gas and oil for Curtis’ car used on the job and we think it is allowable to Curtis as naturally expected under the circumstances. Accordingly, plaintiff will be awarded $1,575.12 on this claim.
Another item is $1,500 consisting of a $1,000 ramp fee paid to release one of the planes and $500 interest paid by Curtis. These were amounts necessary to unen-cumber the aircraft shown in the prospectus and should be allowed.
Another of the items sought is $15,000 for two propellers which were adtnittedly included in corporate assets but at trial time not received by plaintiff. Shortly after the stipulation to deliver the corporate assets, an arrangement was made between Curtis and a representative of plaintiff to go to Florida to pick up the propellers. ' This appointment was cancelled at the instance of plaintiff’s representative. Apparently lack of communication then ensued. Under the order emanating from the rule and also the stipulation it was Curtis’ obligation to deliver these to the corporation and we think he should be held liable for their value. Curtis claimed these propellers were worth $2,500 to $3,000 each. Sharpe claimed they were supposed to have been overhauled and would be worth $7,500 each. We will allow a total of $9,000 for the value of the two propellers.
There are three other items claimed which total $15,000 and are for failure to furnish an engine, equipment and dispersal unit. These are assertable under the terms *644 of the partnership or pre-incorporation agreement. We have previously referred to this. Although the items shown on the prospectus as amounts necessary to obtain the aircraft free of liens have been treated by us as a guarantee by Curtis, we do not necessarily conclude the same as to the figures pertaining to readying the aircraft for use. The testimony is contradictory on this point. We do not think the evidence preponderates that an absolute guarantee was intended by the parties as to these figures. The testimony is contradictory on this point. Later action by Hale and Sharpe in advancing additional funds to ready the aircraft and the financial arrangements made during incorporation tend to confirm the nonguaranty nature of that part of the prospectus. There was a substantial delay by Sharpe in advancing his share of the funds and Curtis attributes failure of the estimate to such delays as necessitating loss labor and incurring price increases. Under all the circumstances of the case, we do not think those items should be allowed.
Accordingly, for reasons assigned, the judgment of the district court on the main demand is reversed and it is ordered that there be judgment in favor of plaintiff, Frontier, Inc., and against defendant, Clayton Curtis, in the full sum of $12,075.12 plus legal interest from date of judicial demand and all costs and that plaintiff’s attachment be maintained and the lien and privilege arising therefrom be recognized on one Martin 404 aircraft, Registration No. 9234C, Serial No. 14143, located at Natchitoches Municipal Airport in Natchi-toches Parish, Louisiana. The judgment of the district court on the reconventional demand is reversed insofar as it dissolved the attachment and awarded damages of attorney fees and it is otherwise affirmed. All costs of this appeal are to be borne equally by the parties.
Reversed in part and rendered and affirmed in part.